In re HERITAGE SOUTHWEST
MEDICAL GROUP, P.A.,
Debtor.

Robert Newhouse, Trustee,
et al., Plaintiffs,

v.

Aetna Life Insurance Co.,
et al., Defendants.

Kenneth Kollmeyer, M.D., Lawrence
Alter, M.D., et al., Plaintiffs,

v.

Aetna Life Insurance Co., Aetna
U.S. Healthcare, Inc., et al.,
Defendants.

Bankruptcy No. 01–30212–SAF–7.
Adversary Nos. 03–3972, 04–3005.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 20, 2004.

J. Ken Johnson, Fleming & Associates, L.L.P., Houston, TX, for Plaintiffs.

John B. Shely, Andrews Kurth LLP, Houston, TX, Jason S. Brookner, Andrews Kurth LLP, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

This memorandum opinion addresses motions to dismiss these adversary proceedings for lack of subject matter jurisdiction and motions to remand to state court. The court conducted a hearing on the motions on March 12, 2004.

In adversary proceeding no. 03–3972, Robert Newhouse, the trustee of the Chapter 7 estate of Heritage Southwest Medical Group, P.A., and several medical providers seek to recover from several insurance companies unpaid claims, including damages, interest and attorney's fees, for medical services. The trustee and the providers allege that the defendant insurance companies failed to pay the providers for medical services to the defendants' insureds, failed to pay Heritage, their intermediary, and failed to provide a complaint system required by Texas law. They allege claims for (1) violation of Texas Insurance Code art. 21.55; (2) violation of Texas Insurance Code art. 20A.09(2); (3) negligence per se and at common law; (4) negligent misrepresentation; (5) common law fraud; (6) violation of the Texas Theft Liability Act; (7) violation of Texas Insurance Code art. 21.21 §§ 4 and 16 and of The Texas Business and Commercial Code § 17.46(b) regarding false statements that claims would be paid; (8) violation of Texas Insurance Code art. 21.07–6, § 12(a). They also seek a declaration that the defendants are liable under Texas law even if they made payments to Heritage. Aetna Life Insurance Company, Aetna Health, Inc., f/k/a Aetna U.S. Healthcare, Inc., Aetna Health, Inc. as successor-by-merger of Aetna Health of North Texas, Inc.[1], and AET Health Plan, Inc., f/k/a Prudential Health Care Plan, Inc. ("Aetna"), move to dismiss for lack of subject matter jurisdiction. In adversary proceeding no. 04–3005, the same providers, but not the trustee, assert virtually identical claims against Aetna, but add a claim for recovery under quantum meruit. Aetna moves to dismiss that complaint for lack of subject matter jurisdiction.

Both adversary proceedings had been filed as petitions in state court in Travis County, Texas. Aetna removed both matters to the United States District Court for the Western District of Texas, where the bankruptcy court transferred the matters to this court. The trustee and the providers move to remand the complaints back to state court.

### Dismissal

Aetna contends that, in essence, the trustee and the providers assert claims premised on medical services provided to Medicare participants in a Medicare + Choice (M + C) plan and, consequently, seek reimbursement for Medicare benefits. As a result, Aetna argues that the trustee and the providers must exhaust their administrative remedies before they may file suit against Aetna. The trustee and the providers respond that they do not seek payment from the United States for Medicare benefits, but instead seek recovery of damages against Aetna under Texas statutory and common law. Aetna responds that regardless of the Texas claims asserted, Medicare may retroactively increase payments thereby paying for the services. Because this possible remedy is available, Aetna maintains that a state or federal court would lack subject matter jurisdic-

1. The motions to dismiss refer to this corporation as Aetna U.S. Healthcare of North Texas, Inc.

tion until the administrative procedure has been exhausted.

The Secretary of Health and Human Services has provided a review process for Medicare claims before the Commissioner of Social Security for the M+C program. 42 C.F.R. §§ 422.560–422.622. Section 405(h) of Title 42, United States Code provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

The statute, at § 405(g), provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days ... Such action shall be brought in the district court of the United States ...." 42 U.S.C. § 405(g).

Part 422 of 42 C.F.R. governs the M+C program. It establishes the standards and requirements, limitations and procedures for Medicare services furnished, or paid for, by M+C organizations through M+C plans. 42 C.F.R. § 422.1(b). Subpart M addresses grievances, organization determinations and appeals.

In these adversary proceedings, the trustee and the providers allege that Aetna did not establish an adequate complaint system. The Medicare Act provides that an M+C organization must establish a meaningful grievance procedure. § 422.560. It appears that the grievance procedure may be delegated to an intermediary like Heritage. § 422.562(a)(3). The grievance procedure may involve providers. § 422.564(a). The procedure includes an administrative review process, culminating in judicial review in district court. § 422.562(b)(4).

The trustee and the providers also complain that the providers have not been paid for Medicare-covered services to Medicare-eligible persons enrolled in the Aetna plan. It appears that failure of an M+C organization to pay for services may be the subject of an organization determination. § 422.566. A provider may request an organization determination. § 422.566(c)(ii). A provider may be a party to an organization determination. § 422.574. The procedure for an organization determination includes an administrative review process, culminating in judicial review in district court. §§ 422.600–422.612. The M+C organization would be a party in the administrative review process. § 422.602(c).

Unless an exception applies, the administrative review process must be exhausted for claims arising under the Medicare Act before litigation may be commenced in district court. *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Courts excuse parties from exhausting the administrative process if the claim is wholly collateral to a demand for benefits; exhaustion would be futile; or the claimant would suffer irreparable harm if required to exhaust administrative remedies. *See Bowen v. City of New York*, 476 U.S. 467, 482–87, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The Secretary may waive the administrative process if the Secretary concludes the process would be futile. *Id.*, *Heckler*, 466 U.S. at 617–18,

104 S.Ct. 2013. A claim is not wholly collateral if it is inextricably intertwined with the Medicare system. *Heckler,* 466 U.S. at 624, 104 S.Ct. 2013.

█ NYLCare 65, now Aetna, established a M + C health care plan. Insureds under that plan obtained services from the providers. Under contract with the Health Care Financing Administration (HCFA), now Centers for Medicare and Medicaid Services (CMS), Aetna received funds from HCFA for Medicare benefits provided to eligible insureds. Aetna contracted with Heritage as a third party administrator to process claims and pay providers. Under the contract, Aetna paid Heritage based on a capitation system, providing a fixed amount per insured. Heritage failed to pay the providers for valid claims. The court understands that the claims involved in this litigation cover Medicare benefits.

The trustee and providers state that they have no quarrel with HCFA nor with the amounts paid by HCFA to Aetna. They represent that they do not put the denial of Medicare reimbursement claims at issue. Consequently, they contend that their state law claims against Aetna are wholly collateral to the Medicare Act. But Aetna responds that the claims cannot be separated from their Medicare basis. In fact, the providers allege that they have not been paid for Medicare-covered services provided to Medicare participants.

Payment to providers for Medicare-covered services appears to be included within the regulations as an organization determination, which is subject to the administrative process. As this court reads the federal regulations cited above, in an organization determination subject to the administrative process, Aetna would have to decline to pay the providers' claims under the M + C plan, after Heritage failed to pay them. That decision would then be challenged in the administrative process. As the court understands Aetna's argument, the Commissioner could, on review, retroactively increase the Medicare payment to cover the claims. Presumably, the Commissioner could also direct Aetna to pay the claims based on the federal money already paid to Aetna by HCFA. The providers want Aetna to pay for those services under various state law theories for recovery, but the providers cannot separate the claims from their Medicare-basis. As a result, the claims are inextricably intertwined with the Medicare benefits

If Aetna disagrees with this reading of the regulations or the court's understanding of Aetna's argument, Aetna shall, within ten days of the date of entry of this order, file a memorandum, signed by counsel, setting forth in detail, with citation to the applicable regulations, the process the providers should follow and the relief that should be requested, with the authority for requesting that relief.

Aetna cites two district court decisions to support its position, *Foley v. Southwest Texas HMO, Inc.,* 226 F.Supp.2d 886 (E.D.Tex.2002), and *Lifecare Hosps., Inc. v. Ochsner Health Plan, Inc.,* 139 F.Supp.2d 768 (W.D.La.2001). The trustee and the providers contend that the district courts erroneously decided the cases. They ask this court to disregard those decisions. This court declines the invitation to declare that two district courts in the Fifth Circuit erred. The court defers to the Fifth Circuit to opine on the correctness of those decisions. This court will consider the teachings of those courts. Accordingly, this court finds the trustee's and providers' claims to be inextricably intertwined with the Medicare benefits. The claims are not wholly collateral to the Medicare Act.

The court is troubled by the prospect that the resolution of this dispute by either the Secretary or Commissioner may be futile. The providers represent to the court that they are not requesting more federal Medicare money to pay their claims. Similarly, they are not challenging the denial of Medicare benefits or Medicare reimbursements. It seems counterintuitive that the Secretary or Commissioner would award retroactive payments when HCFA has already provided funds to Aetna and when the providers assert Aetna has failed to cause them to be paid by allegedly committing several violations of Texas law. But the court cannot definitively determine whether the trustee and the providers have a Medicare remedy available absent a full evidentiary hearing.

The court notes, furthermore, that neither side has provided authority to suggest that the Secretary has waived the administrative process for claims based solely on state law seeking recovery solely from insurance companies. The lack of that kind of authority suggests that the Secretary has not decided that the administrative process would be futile.

Aetna represents to the court a good faith belief that the process would not be futile. But that position suggests that Aetna may have a contractual duty to Heritage or to the providers to itself pay the providers through an organization determination. Aetna as the HMO obtained the Medicare funds from HCFA. Aetna, in turn, entered the third party administrator contract with Heritage. Aetna sold M + C plans to insureds. Aetna may have a contractual obligation to its intermediary and its insureds to pursue retroactive Medicare payments and, if successful, to adjust its contractual payments to Heritage.

The court also notes that if the Commissioner denies a retroactive payment or declares that the dispute does not arise under the Medicare Act and is, therefore, merely between or among the trustee, the providers and Aetna, Aetna will be judicially estopped from contending that it cannot be sued on the state law claims in district court on judicial review under 42 U.S.C. § 405(h). Of course, Aetna may seek review of the Commissioner's decision in the same litigation.

■ The trustee and providers contend that the exhaustion requirement should not apply to proceedings under Part C of the Medicare Act. They explain that the administrative proceedings apply to Part A covering hospitalization costs and Part B covering supplementary medical insurance. Part C established the M + C program. The trustee and the providers argue that disputes under the M + C program should be distinguished from original Medicare, defined as health insurance available under Parts A and B through the traditional fee for service payment system. 42 C.F.R. § 422.2. While the regulations thereby distinguish between Part C and original Medicare, the trustee and the providers cite no section of Part 422 that excludes M + C disputes from the administrative process. To the contrary, as discussed above, Subpart M of Part 422 includes the administrative process. The court notes that § 422.600(b), under right to hearing, provides that amounts remaining in controversy after the organization determination "can include any combination of Part A and Part B services" as computed in the applicable sections for those matters. Presumably, that means that amounts claimed for hospitalization or other provider services covered under Parts A and B may be at issue under Part C. On this review, the court cannot conclude that Part C disputes are excluded from the administrative process.

Lastly, the court may enter relief assuring that neither the trustee nor the provid-

ers will be irreparably harmed if required to exhaust administrative remedies. If the Commissioner holds that relief, regardless of the merits of the claims, is not available through the administrative process, this court may provide for the recovery by the trustee and the providers from Aetna of their attorney's fees and other expenses incurred exhausting the administrative process. In addition, if the trustee and/or the providers ultimately obtain a recovery from Aetna under their state law claims, this court will award pre-judgment interest to protect the providers for the delay caused by exhausting administrative remedies. Attorney's fees will not be awarded to the trustee and the providers if the Commissioner holds that relief could be obtained in the review process, but that the providers did not establish their claims on the merits.

■ In the underlying pending bankruptcy case, the trustee has a Congressionally-imposed duty to liquidate assets of the bankruptcy estate. 11 U.S.C. § 704(1). While the trustee may have to exhaust the administrative remedies to do so, dismissal of the trustee's complaint would be inappropriate. Judicial review of an adverse administrative determination would be in this district. The state law claims have already been alleged by the trustee in this adversary proceeding. Accordingly, rather than dismiss the trustee's complaint, the court will administratively close the trustee's adversary proceeding without prejudice to re-opening on motion and hearing.

## Remand/Abstain

The trustee and the providers move to remand both adversary proceedings to state court and/or, in the alternative, for this court to abstain. Aetna opposes those motions.

■ The parties agree that the court has "related to" jurisdiction over both adversary proceedings. 28 U.S.C. § 1334(b). In addition, the trustee's claims against Aetna raise a core matter. Aetna has filed a proof of claim in the underlying bankruptcy case. The trustee's claims against Aetna amount to counter-claims. 28 U.S.C. § 157(b)(2)(C); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 741 (5th Cir.1993). The trustee cannot administer the bankruptcy estate without completing the claims allowance process.

■ As found above, the trustee and the providers must exhaust their administrative remedies. An adverse ruling by the Commissioner is reviewable only in district court. The trustee and the providers therefore cannot maintain their litigation in state court. Mandatory abstention does not apply. 28 U.S.C. § 1334(c)(2). Indeed, under 42 U.S.C. § 405(g), because the litigation must proceed in district court, discretionary abstention would likewise not apply. 28 U.S.C. § 1334(c)(1).

If, however, the Commissioner holds that the administrative process does not apply to the trustee's and the providers' claims, the court would revisit discretionary abstention, weighing the various factors for the exercise of discretion.

### Order

Based on the foregoing,

**IT IS ORDERED** that the motions to remand and/or abstain are **DENIED**, without prejudice.

**IT IS FURTHER ORDERED** that the adversary proceedings are **ADMINISTRATIVELY CLOSED** pending exhaustion of administrative remedies.